**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NATIONAL FUEL GAS DISTRIBUTION CORPORATION and THE BUSINESS COUNCIL OF NEW YORK STATE, INC.,<br><br>Plaintiffs,<br><br>-against-<br><br>RORY M. CHRISTIAN, in his official capacity as Commissioner and Chair of the New York State Public Service Commission, JAMES S. ALESI, in his official capacity as Commissioner of the New York State Public Service Commission, DAVID J. VALESKY, in his official capacity as Commissioner of the New York State Public Service Commission, JOHN B. MAGGIORE, in his official capacity as Commissioner of the New York State Public Service Commission, UCHENNA S. BRIGHT, in her official capacity as Commissioner of the New York State Public Service Commission, DENISE M. SHEEHAN, in her official capacity as Commissioner of the New York State Public Service Commission, RADINA M. VALOVA, in her official capacity as Commissioner of the New York State Public Service Commission,<br><br>Defendants. | Civil Action No. 1:25-cv-00525-GTS-MJK |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**Table of Contents**

**Page**

Table of Authorities .......... ii

Introduction .......... 1

Background .......... 2

A. New York begins to restrict utilities' out-of-state provision of customer-assistance services. .......... 2

B. Recent amendments greatly expand New York's restrictions on out-of-state customer assistance. .......... 4

C. Plaintiffs rely on the interstate market for customer-assistance services to respond to customer concerns. .......... 7

D. This Court enjoins the amendments to section 65(13). .......... 9

Legal Standard .......... 11

Argument .......... 11

I. Section 65(13) violates the Commerce Clause. .......... 12

A. Section 65(13) facially discriminates against interstate commerce. .......... 12

1. Section 65(13) expressly burdens out-of-state commerce to benefit in-state commerce. .......... 13

2. Defendants' attempts to avoid strict scrutiny fail. .......... 16

B. Section 65(13)'s prohibition on transferring calls out of state was enacted to discriminate against interstate commerce. .......... 18

C. Section 65(13) discriminates against interstate commerce in its effects. .......... 20

D. Section 65(13) cannot survive the Commerce Clause's virtually per se rule of invalidity. .......... 21

II. The remaining permanent-injunction factors favor relief. .......... 23

Conclusion .......... 24

## TABLE OF AUTHORITIES

**Page**

**CASES**

*A.H. ex rel. Hester v. French*,
985 F.3d 165 (2d Cir. 2021) .......... 23

*Agudath Israel of Am. v. Cuomo*,
983 F.3d 620 (2d Cir. 2020) .......... 24

*Arkansas Elec. Co-op Corp. v. Ark. Pub. Serv. Comm'n*,
461 U.S. 375 (1983) .......... 16

*Associated Indus. of Mo. v. Lohman*,
511 U.S. 641 (1994) .......... 17

*Bacchus Imports, Ltd. v. Dias*,
468 U.S. 263 (1984) .......... 18, 24

*Brown & Williamson Tobacco Corp. v. Pataki*,
320 F.3d 200 (2d Cir. 2003) .......... 15

*C&A Carbone, Inc. v. Town of Clarkstown*,
511 U.S. 383 (1994) .......... 15, 20

*Camps Newfound/Owatonna, Inc. v. Town of Harrison*,
520 U.S. 564 (1997) .......... 15, 21, 22

*Chemical Waste Mgmt., Inc. v. Hunt*
504 U.S. 334 (1992) .......... 18

*City of Philadelphia v. New Jersey*,
437 U.S. 617 (1978) .......... passim

*Dean Milk Co. v. City of Madison*,
340 U.S. 349 (1951) .......... 14

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006) .......... 11

*Energy Mich., Inc. v. Mich. Pub. Serv. Comm'n*,
126 F.4th 476 (6th Cir. 2025) ........ 16

*Entergy Nuclear Vermont Yankee, LLC v. Shumlin*,
733 F.3d 393 (2d Cir. 2013) ........ 16

*Foster-Fountain Packing Co. v. Haydel*,
278 U.S. 1 (1928) ........ 14, 15

*Granholm v. Heald*,
544 U.S. 460 (2005) ........ 11, 13

*Hughes v. Alexandria Scrap Corp.*,
426 U.S. 794 (1976) ........ 17

*Hughes v. Oklahoma*,
441 U.S. 322 (1979) ........ 13, 15, 21

*Hunt v. Wash. State Apple Advertising Comm'n*,
432 U.S. 333 (1977) ........ 18, 19

*Int'l Text-Book Co. v. Pigg*,
217 U.S. 91 (1910) ........ 18

*Lewis v. BT Inv. Managers, Inc.*,
447 U.S. 27 (1980) ........ 15, 20

*Maine v. Taylor*,
477 U.S. 131 (1986) ........ 22

*N.Y. Pet Welfare Ass'n v. City of New York*,
850 F.3d 79 (2d Cir. 2017) ........ 12, 18

*N.Y. Progress & Prot. PAC v. Walsh*,
733 F.3d 483 (2d Cir. 2013) ........ 24

*Nat'l Pork Producers Council v. Ross*
598 U.S. 356, 372 (2023) ........ 20

*New Energy Co. of Ind. v. Limbach*,
486 U.S. 269 (1988) ........ 13

*New England Power Co. v. New Hampshire*,
455 U.S. 331 (1982) .................................................................................. 16

*NextEra Energy Cap. Holdings, Inc. v. Lake*,
48 F.4th 306 (5th Cir. 2022)......................................................................... 16

*Oregon Waste Sys., Inc. v. Dep't of Env't Quality*,
511 U.S. 93 (1994) ............................................................................. 13, 14

*Pike v. Bruce Church, Inc.*,
397 U.S. 137 (1970) .................................................................................. 14

*Rest. L. Ctr. v. City of New York*,
90 F.4th 101 (2d Cir. 2024) ...................................................... 12, 20, 21

*Robar v. Vill. of Potsdam Bd. of Trustees*,
490 F. Supp. 3d 546 (N.D.N.Y. 2020)......................................................... 24

*Rozema v. HHS*,
167 F. Supp. 3d 324 (N.D.N.Y. 2016)......................................................... 11

*Selevan v. N.Y. Thruway Auth.*,
584 F.3d 82 (2d Cir. 2009).................................................................. 17, 20

*Tennessee Wine & Spirits Retailers Ass'n v. Thomas*,
588 U.S. 504 (2019) ........................................................................... 11, 13

*United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 261 F.3d 245, 260 (2d Cir. 2001)............................................................ 14

*United States v. New York*,
708 F.2d 92 (2d Cir. 1983).......................................................................... 23

*Variscite NY Four, LLC v. N.Y. State Cannabis Control Bd.*,
--- F.4th ----, 2025 WL 2313142 (2d Cir. 2025) ..........................................passim

*Variscite NY One, Inc. v. New York*,
640 F. Supp. 3d 232 (N.D.N.Y. 2022)......................................................... 23

*Wyoming v. Oklahoma*,
502 U.S. 437 (1992) ........................................................................... 13, 14

**STATUTES**

N.Y. Pub. Serv. Law § 5 .......... 2

N.Y. Pub. Serv. Law § 25 .......... 6

N.Y. Pub. Serv. Law § 65 .......... passim

2010 N.Y. Sess. Laws Ch. 330 .......... 3

2024 N.Y. Sess. Laws Ch. 675 .......... 4

2025 N.Y. Sess. Laws Ch. 107 .......... 6

**RULES**

Fed. R. Civ. P. 56 .......... 11

**OTHER SOURCES**

Case 99-M-0851, Consolidated Edison Company of New York, Inc. – Customer Service Offices, Order (March 27, 2001) .......... 2

## INTRODUCTION

New York Public Service Law § 65(13) effectively cuts New York's utilities off from the interstate market for customer-assistance services. The law's prohibition on engaging in interstate commerce is clear: "No gas or electric corporation shall" transfer customer-assistance calls "outside of New York state without notice, a hearing and approval before the" Public Service Commission. N.Y. Pub. Serv. Law § 65(13)(b). Its purpose is equally transparent: to keep "good-paying jobs here in New York State." Dkt. 1-3, 2024 Bill Jacket at 8.

As this Court held in granting a preliminary injunction against the recent amendments to § 65(13), that prohibition discriminates against interstate commerce in every possible way—on its face, in its purpose, and in its effects. It therefore violates the Commerce Clause thrice over.

On its face, § 65(13) expressly draws exactly the line that the Commerce Clause forbids. Utilities' provision of customer-assistance services is legal if they build a call center in New York or hire a New York-based company. But the same services are presumptively forbidden if obtained or provided across the border in Pennsylvania. The framers ratified the Commerce Clause to avoid such economic balkanization. As for § 65(13)'s purpose, the law's history makes clear that protectionism was the point. Section 65(13) was enacted to shield New York call centers from out-of-state competition. Had this Court not enjoined enforcement of the amendments to § 65(13), they would have accomplished that goal—a clear discriminatory effect.

Thus, § 65(13) must survive strict scrutiny. It cannot. As this Court's preliminary-injunction opinion explained, Defendants failed even to show that § 65(13) serves a valid state interest, let alone that no nondiscriminatory alternative would further the interests they posited but failed to prove.

The amendments to § 65(13) therefore violate the Commerce Clause, and the other requirements for permanent injunctive relief are satisfied. Plaintiffs ask that this Court grant a declaratory judgment and enter a permanent injunction barring enforcement of the amendments against National Fuel Gas Distribution Corporation and members of The Business Council of New York State, Inc.

## Background

### A. New York begins to restrict utilities' out-of-state provision of customer-assistance services.

The New York State Public Service Commission has jurisdiction over gas corporations and electric corporations (colloquially known as utilities). N.Y. Pub. Serv. Law § 5(1)(b). It ensures that utilities "furnish and provide such service, instrumentalities and facilities as shall be safe and adequate and in all respects just and reasonable." *Id.* § 65(1). In the early 2000s, the Commission used that authority to require that utilities provide adequate customer assistance. *See, e.g.*, Case 99-M-0851, Consolidated Edison Company of New York, Inc. – Customer Service Offices, Order (March 27, 2001), *available at* https://tinyurl.com/OrderMarch2001; *see also* Dkt. 1-1, 2008 Bill Jacket at 19 (Commission letter summarizing its efforts to regulate utility customer assistance). Some utilities provided that assistance using out-of-state call centers. 2008 Bill Jacket at 19, 31, 38.

In the late 2000s, New York legislators began to express concern about utilities moving customer-assistance operations out of New York. 2008 Bill Jacket at 12. Legislators considered that trend "a disinvestment in … New York's economy." *Id.* So they passed a bill to mandate that utilities provide "call center service assistance" using only "services located within this state," and specifying the topics on which utilities must provide customer assistance. *Id.* at 78. The bill had many supporters who considered the law "an essential step towards protecting and retaining jobs in New York State." *Id.* at 21, 64, 73. But the Public Service Commission opposed the local-service mandate. *Id.* at 18. It explained that requiring in-state customer-assistance services "would diminish the efficient operation of utility service (and place upward pressure on rates) without any clear improvement in customer service." *Id.* The Governor agreed with the Commission and vetoed the bill. *Id.* at 6. Like the Commission, he found no evidence that local call-center workers would provide better service. *Id.* He also concluded that the bill "appear[ed] to violate the Commerce Clause" because it "discriminate[d] against out-of-state call center businesses by prohibiting them from providing call center services to the utilities." *Id.* at 7.

Two years later, legislators had more success. The new law again required in paragraph (a) that utilities provide "call center customer assistance" on an array of topics. 2010 N.Y. Sess. Laws Ch. 330. But instead of mandating that all customer-assistance calls be handled in New York, it provided in paragraph (b): "No gas or electric corporation shall close a call center or other facility providing the customer assistance set forth in paragraph (a) of this subdivision or relocate such customer

assistance to another area of New York state or outside of New York state without notice and hearing before the commission." *Id.*

The legislature continued to be motivated by the view that moving customer-assistance services out of New York was "a disinvestment in … New York's economy" that should be stopped. Dkt. 1-2, 2010 Bill Jacket at 6. Unions' letters in support of the bill recognized that goal. *Id.* at 22 ("We cannot afford to lose more good jobs."); *id.* at 31 ("During this time of economic distress and unrest, saving jobs for New Yorkers should be a priority to us all. . . . Simply stated—call center jobs for New Yorkers will help our economy."). This time the Commission neither supported nor opposed the bill, explaining that "although the bill fails to demonstrate additional concrete benefits for customers, its goal is well intentioned and it does not unduly add to the Department [of Public Service]'s workload." *Id.* at 14. The bill was enacted and codified as subdivision 13 of Public Service Law § 65.

**B. Recent amendments greatly expand New York's restrictions on out-of-state customer assistance.**

In 2024, New York dramatically expanded the scope of § 65(13)'s requirements. It eliminated the law's focus on the relocation of physical call centers and instead made "each individual phone call, writing, email, text, chat, or any other communication" an "independent instance of customer assistance" that cannot be transferred out of the utility's "New York state service territory or outside of New York state without notice, a hearing and approval before the Commission." 2024 N.Y. Sess. Laws Ch. 675. Hearings can occur no sooner than sixty days after the utility provides notice of its intent to send calls out of state. *Id.* The 2024 amendments also

added: "In no event shall a gas or electric corporation's history of sending customer assistance outside the gas or electric corporation's New York state service territory or outside of New York state be used as justification for doing so after" the 2024 amendments took effect. *Id.* Finally, they imposed a penalty of "fifty thousand dollars … for each separate and distinct customer service inquiry sent outside of New York," though that penalty would apply only if it exceeded the existing baseline penalty of up to $100,000 per offense. *Id.* The amendments were enacted to keep "good-paying jobs here in New York State." Dkt. 1-3 at 8[1] (2024 Bill Jacket).

In effect, the 2024 amendments turned § 65(13) into the same law that had been vetoed in 2008 because it violated the Commerce Clause—individual requests for customer assistance can no longer be answered out of state, so all customer assistance must be provided by New York representatives. The only difference is that the Commission *might*, after a lengthy notice-and-hearing process, allow some calls to be transferred out of state. Or it might not.

When signing the 2024 bill, the Governor noted that the law required further "amendments to ensure consistency with existing laws, to define acceptable exemptions, to align penalties with existing law, and to ensure that call center jobs already in the State are protected." 2024 Bill Jacket at 8. She emphasized that those changes would "ensure" that "jobs stay right here in New York." *Id.*

[1] The 2024 bill jacket is not paginated in the same way as the earlier ones, so page citations are to the blue page numbers at the top of the filed document.

So in March of this year, the Legislature amended § 65(13) one more time. The 2025 amendments eliminated the express statement that each individual call or text could not be transferred out of state without Commission approval, but they did not alter the scope of § 65(13)'s prohibition. 2025 N.Y. Sess. Laws Ch. 107. Section 65(13) continues to forbid sending any "customer assistance outside such gas or electric corporation's New York state service territory or outside of New York state without notice, a hearing and approval before the commission." *Id.* The 2025 amendments also dropped the § 65(13)-specific penalty, *id.*, leaving only the baseline penalty of up to $100,000 per offense, N.Y. Pub. Serv. Law § 25(2). And they removed the prohibition on considering a past practice of sending customer assistance out of utilities' service territory or New York. 2025 N.Y. Sess. Laws Ch. 107.

The amendments replaced that prohibition with a provision allowing the transfer "of customer assistance calls to any of the corporation's call centers *within* New York state in existence prior to the effective date of the chapter of the laws of two thousand twenty-five that amended this paragraph, regardless of the specific service territory." 2025 N.Y. Sess. Laws Ch. 107 § 1 (emphasis added). No such exemption applies to calls transferred out of New York. *See id.* Instead, a narrow provision allows utilities to "send customer assistance requests outside of such corporation's New York state service territory or outside of New York state" during a natural disaster or other emergency, with the further limit that "[a]ny transfer of customer assistance requests outside of New York state … shall be temporary and only for the duration of the emergency situation." *Id.*

Incorporating all of the relevant amendments, the key sentence in § 65(13) now reads: "No gas or electric corporation shall close a call center or other facility providing the customer assistance set forth in paragraph (a) of this subdivision or send such customer assistance outside such gas or electric corporation's New York state service territory or outside of New York state without notice, a hearing and approval before the commission." N.Y. Pub. Serv. Law § 65(13)(b). As this Court explained in its preliminary-injunction opinion, that clause prohibits transferring calls and texts out of state under penalty of a $100,000 fine for each offense. Decision and Order on Plaintiffs' Motion for a Preliminary Injunction (Dkt. 31) ("PI Opinion") at 20. And it allows the Public Service Commission to force utilities to move customer-assistance operations into New York simply by denying them permission to transfer calls elsewhere. *Id.* at 20 n.8. At that point, utilities would still need to provide customer assistance—both § 65(13)(a) and basic business sense require it—and they could provide it only in New York. *Id.*

### C. Plaintiffs rely on the interstate market for customer-assistance services to respond to customer concerns.

Plaintiffs are (or represent) utilities that must comply with § 65(13). Utilities provide out-of-state customer assistance in different ways, and § 65(13) threatens to upend each approach.

National Fuel operates two call centers, one in New York and the other in Pennsylvania. Statement of Undisputed Material Facts (SUMF) ¶ 5. Employees in Pennsylvania are trained and able to help New York customers. *Id.* ¶ 7. So for customers calling with emergencies like a potential gas leak, National Fuel does not

direct calls based on their origin—the first available representative in New York or Pennsylvania answers, advises the customer on the immediate next steps to ensure his or her safety, and (if necessary) coordinates the response teams to help. *Id.* ¶¶ 8–9. Limiting emergency calls to New York representatives would cause longer wait times, which could be dangerous for customers who need immediate aid. *Id.* ¶ 10.

Pennsylvania representatives also make up about 15% of the employees who answer non-emergency calls from New York customers. *Id.* ¶ 11. Requiring that all calls be answered in New York would cause those customers to suffer longer wait times, which could violate the Commission's requirements for the quality of customer service that utilities must provide. *Id.* ¶ 13.

There is no reason to impose those adverse effects on National Fuel's customers. Under National Fuel's current approach, neither it nor Defendants are aware of any customer complaints based on the location of the representative who provided customer assistance. *Id.* ¶¶ 15–16. Yet § 65(13) would require National Fuel to change its operations, hire additional New York employees, and reprogram its phone systems to ensure that New York calls regarding the topics § 65(13)(a) requires are routed exclusively to its New York representatives. *Id.* ¶ 14.

Corning Natural Gas Corporation, one of The Business Council's members, procures customer-assistance services from an out-of-state third-party company. *Id.* ¶¶ 18, 21. Corning operates its own call center during business hours. *Id.* ¶ 23. But it relies on the other company, Cooperative Response Center, to answer emergency calls during non-business hours. *Id.* ¶ 24. CRC also provides support during business

hours. *Id.* If Corning's employees do not answer a call after the fourth ring, whether because of high call volume, a power outage, or any other issue, the call goes to CRC and one of its representatives answers. *Id.*

Corning has not received any customer complaints about CRC. *Id.* ¶ 25. Despite that, § 65(13) would require Corning to break its contract with CRC. *Id.* ¶ 26. And because no third-party vendor can guarantee that all calls will be answered in New York, Corning would need to hire several additional employees, which would be "prohibitively expensive." *Id.*

**D. This Court enjoins the amendments to section 65(13).**

Faced with the disruption the amendments would cause, Plaintiffs sought a preliminary injunction. Dkt. 7. On June 16, this Court granted Plaintiffs' motion. *See* PI Opinion 1. The Court held that Plaintiffs were likely to succeed on the merits of their Commerce Clause challenge to § 65(13) because the law discriminates against interstate commerce on its face, in its purpose, and in its effects. *Id.* at 17–18 & n.7.

The opinion focused on the facial discrimination, explaining that § 65(13) does not regulate "evenhandedly" because it "expressly distinguishes between customer assistance … outside of New York state and customer assistance inside of New York state," *id.* at 16–17 (quotations omitted). Defendants "appear[ed] to concede" that point. *Id.* at 17. The Court then dispensed with Defendants' attempts to avoid strict scrutiny. *Id.* at 18–20. First, there is "no authority warranting the application of lesser scrutiny in cases involving utility companies." *Id.* at 19. Second, § 65(13) is a prohibition, not a "process," because the "statute expressly provides that '[n]o gas or electric corporation shall … send such customer assistance [set forth in paragraph (a)

of this subdivision] … outside of New York state without notice, a hearing and approval before the commission.'" *Id.* at 20 (quoting N.Y. Pub. Serv. Law § 65(13)).

Applying strict scrutiny, the Court concluded that "Defendants have offered no admissible record evidence (only argument) that the statute serves any valid state interest or local benefit." *Id.* at 22. Defendants provided no evidence that the Commission had "received a single customer complaint" about "a customer-assistance representative's location out of state." *Id.* And they did not prove a need for customer-assistance representatives to be physically present in New York. *Id.* at 23–24. On top of that, the Court concluded that the "apparent existence of a nondiscriminatory alternative by which New York State could protect any such local interest" was "an independent ground on which" the law likely failed strict scrutiny. *Id.* at 25. Defendants offered no evidence that any necessary knowledge of local conditions "could not be identified and taught to out-of-state customer-assistance representatives." *Id.* at 24–25. And the data utilities already report provides a nondiscriminatory way for Defendants to monitor and regulate out-of-state customer-assistance representatives. *Id.* at 25.

For those reasons, the Court concluded that Plaintiffs were likely to succeed on the merits. It further held that Plaintiffs would suffer irreparable harm absent an injunction, and that the balance of the equities and public interest favored injunctive relief. *Id.* at 25–29. Defendants did not appeal the Court's entry of a preliminary injunction.

## LEGAL STANDARD

Summary judgment is proper when "there is no dispute as to any material fact" and "the movant is entitled to a judgment as a matter of law." *Rozema v. HHS*, 167 F. Supp. 3d 324, 336 (N.D.N.Y. 2016) (quoting Fed. R. Civ. P. 56(a)). The parties agree that no material facts are disputed and this case can properly be resolved as a matter of law. Civil Case Management Plan, Dkt. 37 at 11. A permanent injunction is warranted when: a plaintiff has suffered irreparable injury and lacks an adequate remedy at law; "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and the injunction would not disserve the public interest. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

## ARGUMENT

The "negative aspect of the Commerce Clause prevents the States from adopting protectionist measures and thus preserves a national market for goods and services." *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 514 (2019) (cleaned up). It ensures that states cannot return to "the trade rivalries and animosities, the alliances and exclusivity, that the Constitution and, in particular, the Commerce Clause were designed to avoid." *Granholm v. Heald*, 544 U.S. 460, 473 (2005). So "where simple economic protectionism is effected by state legislation, a virtually *per se* rule of invalidity has been erected." *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978). The law is unconstitutional "unless the government has no other means to advance a legitimate local purpose." *Variscite NY Four, LLC v. N.Y. State Cannabis Control Bd.*, --- F.4th ----, 2025 WL 2313142, at *10 (2d Cir. 2025) (quoting *Rest. L. Ctr. v. City of New York*, 90 F.4th 101, 118 (2d Cir. 2024)).

Section 65(13) unconstitutionally discriminates against interstate commerce. Because it violates Plaintiffs' constitutional rights and would upend their business practices without any countervailing benefits, injunctive relief is warranted.

## I. Section 65(13) violates the Commerce Clause.

A law can discriminate against interstate commerce in three ways: on its face, in its purpose, or in its effects. *Id.* Section 65(13) does all three.

Section 65(13) expressly restricts out-of-state call-center operations while leaving in-state operations untouched. It was enacted to shield the New York customer-assistance industry and jobs from interstate competition. And it has the effect of placing a substantial burden on any utility that wants to access the interstate market for customer-assistance services. It therefore faces and fails the Commerce Clause's "virtually per se rule of invalidity." *City of Philadelphia*, 437 U.S. at 624.

### A. Section 65(13) facially discriminates against interstate commerce.

Section 65(13), on its face, imposes "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Variscite*, 2025 WL 2313142, at *10 (quoting *N.Y. Pet Welfare Ass'n v. City of New York*, 850 F.3d 79, 89 (2d Cir. 2017)). The law forbids sending "customer assistance outside [a] gas or electric corporation's New York state service territory or outside of New York state without notice, a hearing and approval before the commission." N.Y. Pub. Serv. Law § 65(13)(b). New York has thus "closed its borders to" customer-assistance services "from other States." *City of Philadelphia*, 437 U.S. at 619. That is unconstitutional.

**1. Section 65(13) expressly burdens out-of-state commerce to benefit in-state commerce.**

Expressly imposing different rules based on whether commerce occurs within the state or crosses state lines is facial discrimination. *See Oregon Waste Sys., Inc. v. Dep't of Env't Quality*, 511 U.S. 93, 99 (1994). *Hughes v. Oklahoma* is paradigmatic. 441 U.S. 322 (1979). There, Oklahoma law provided, with minor exceptions, that "[n]o person may transport or ship minnows for sale outside the state which were seined or procured within the waters of this state." *Id.* at 323. That law "on its face discriminate[d] against interstate commerce." *Id.* at 336. The facial discrimination was obvious; the only disputed question in *Hughes* was whether an earlier case allowing states to keep wild game in state, *Geer v. Connecticut*, saved the law. *Id.* at 327. (It didn't. *Id.* at 326.)

Countless cases illustrate the same point: States cannot regulate commerce based on lines drawn at their borders. "[E]xpressly reserv[ing] a segment of the Oklahoma coal market for Oklahoma-mined coal?" *Wyoming v. Oklahoma*, 502 U.S. 437, 455 (1992). Unconstitutional. *Id.* Providing different tax treatment to products "made in certain other states?" *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 274 (1988). Unconstitutional. *Id.* Prohibiting importation of waste "collected outside the territorial limits of the State?" *City of Philadelphia*, 437 U.S. at 618. Unconstitutional. *Id.* The list could go on. *See, e.g.*, *Tennessee Wine*, 588 U.S. at 511; *Granholm*, 544 U.S. at 466–67; *Oregon Waste*, 511 U.S. at 99; *Variscite*, 2025 WL 2313142, at *10–11.

Section 65(13) is cut from the same cloth. It is, like the law in *City of Philadelphia*, among "[t]he clearest example[s] of" discriminatory legislation: "a law that overtly blocks the flow of interstate commerce at a State's borders." 437 U.S. at 624. It sets the rules for transferring customer-assistance calls based on whether they are transferred "outside of New York state." N.Y. Pub. Serv. Law § 65(13)(b). And it provides an exemption only for existing call centers "*within* New York state." *Id.* (emphasis added). Section 65(13) therefore "cannot be characterized as anything other than protectionist and discriminatory." *Wyoming*, 502 U.S. at 455.

For the same reasons, § 65(13) runs afoul of what the Second Circuit has called the Supreme Court's "local processing line of cases." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 261 F.3d 245, 260 (2d Cir. 2001). The Court has "viewed with particular suspicion state statutes requiring business operations to be performed in the home State that could more efficiently be performed elsewhere. Even where the State is pursuing a clearly legitimate local interest, this particular burden on commerce has been declared to be virtually per se illegal." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 145 (1970). In *Pike,* for example, Arizona ordered a company that operated an Arizona cantaloupe ranch to pack and process its cantaloupes in Arizona instead of shipping them across the border to California for processing. *Id.* at 138. That was unconstitutional. *Id.* at 146. States cannot impose "such a straitjacket on" a business "with respect to the allocation of its interstate resources." *Id.* at 146; *see also Dean Milk Co. v. City of Madison*, 340 U.S. 349, 354 (1951); *Foster-Fountain Packing Co. v. Haydel*, 278 U.S. 1, 10–14 (1928).

So too here. By "its very terms," § 65(13) makes "a geographical distinction in favor of in-state businesses by requiring that a commercial activity be conducted within the state." *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200, 211 (2d Cir. 2003) (emphasis omitted). It makes no difference that here, the business operation is answering calls rather than processing goods for export, or that the article of commerce subjected to protectionist regulation is calls rather than coal. *See C&A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 389 (1994). The Commerce Clause protects "all the component parts of commercial intercourse among States." *Foster-Fountain Packing*, 278 U.S. at 10. That includes "service industries." *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 577 n. 10 (1997); *see also Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 37 (1980) (barring discrimination against out-of-state companies that sought to provide banking services to state residents). New York can't require local processing of customer-assistance calls any more than Arizona could mandate local processing of cantaloupes.

In short, as this Court held at the preliminary-injunction stage, § 65(13) facially discriminates against interstate commerce. PI Opinion 17–18. "Such facial discrimination by itself may be a fatal defect, regardless of the State's purpose, because 'the evil of protectionism can reside in legislative means as well as legislative ends.'" *Hughes*, 441 U.S. at 337 (quoting *City of Philadelphia*, 437 U.S. at 626). "At a minimum such facial discrimination invokes the strictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives." *Id.* Section 65(13) is not the rare law that survives that scrutiny. *See infra* Part I.D.

**2. Defendants' attempts to avoid strict scrutiny fail.**

At the preliminary-injunction stage, Defendants attempted to avoid strict scrutiny by arguing for a novel rule that would strip utilities of the Commerce Clause's protections, and by attempting to rewrite § 65(13) into a law that simply provided a process for transferring calls out of state rather than a prohibition on doing so. Neither argument works.

Precedent forecloses the argument that utility regulation receives less-strict scrutiny. As this Court noted, Defendants offered "no authority warranting the application of lesser scrutiny in cases involving utility companies that are heavily regulated by the state." PI Opinion 19. They couldn't. A mountain of precedent establishes that utilities have the same Commerce Clause rights as any other business. *See, e.g.*, *Arkansas Elec. Co-op Corp. v. Ark. Pub. Serv. Comm'n*, 461 U.S. 375, 391 (1983) ("Our constitutional review of state utility regulation in related contexts has not treated it as a special province insulated from our general Commerce Clause jurisprudence."); *New England Power Co. v. New Hampshire*, 455 U.S. 331, 333, 339 (1982); *Entergy Nuclear Vermont Yankee, LLC v. Shumlin*, 733 F.3d 393, 398, 431 (2d Cir. 2013); *Energy Mich., Inc. v. Mich. Pub. Serv. Comm'n*, 126 F.4th 476, 485, 491–92, 496 (6th Cir. 2025) (there is no "public utility or energy exception to the dormant Commerce clause"); *NextEra Energy Cap. Holdings, Inc. v. Lake*, 48 F.4th 306, 318 (5th Cir. 2022) ("This much is certain: Utilities, despite their history as monopolies and the vestiges of that tradition even in deregulated markets, are not immune from ordinary Commerce Clause jurisprudence." (cleaned up)).

Defendants' attempt to rewrite § 65(13) is equally unpersuasive. First, their version of the law runs smack into what it actually says. The statutory baseline is that "[n]o gas or electric corporation shall … send such customer assistance" out of state. N.Y. Pub. Serv. Law § 65(13)(b). That is a clear prohibition. PI Opinion 20. And the prohibition applies unless the Commission chooses, in its discretion, to grant approval for interstate calls.

Second, even on Defendants' reading of the law, the Commission decides whether a utility has offered a "reasonable justification" for exercising its right to engage in interstate commerce, while the utility need not justify operating a call center in its New York service territory. Dkt. 24-1 at 15. That, too, is unconstitutional discrimination against interstate commerce. "[T]he right to engage in interstate commerce is not the gift of a state," so "a state cannot regulate or restrain it." *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 90 (2d Cir. 2009) (quoting *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 808 (1976)).

Third, it would make no difference if § 65(13) guaranteed approval but simply required a hearing before it was granted. Where a statute facially discriminates against interstate commerce, any burden is unconstitutional. PI Opinion 17 n.6; *Associated Indus. of Mo. v. Lohman*, 511 U.S. 641, 650 (1994) ("[A]ctual discrimination, wherever it is found, is impermissible, and the magnitude and scope of the discrimination have no bearing on the determinative question whether discrimination has occurred."). So the lengthy hearing process the law requires if utilities want to provide customer assistance across state lines—which Defendants'

witness suggested could take "between a year and two years," PI Hearing Tr. 43:6–8—violates the Commerce Clause on its own. *See Int'l Text-Book Co. v. Pigg*, 217 U.S. 91, 108 (1910) (requiring out-of-state businesses to file registration statements violated the Commerce Clause).

Defendants' attempt to justify § 65(13)'s discrimination against interstate commerce thus fails at every turn. Strict scrutiny applies.

### B. Section 65(13)'s prohibition on transferring calls out of state was enacted to discriminate against interstate commerce.

State laws also violate the Commerce Clause if they "harbor a discriminatory purpose." *N.Y. Pet Welfare*, 850 F.3d at 90. The Supreme Court has "consistently found parochial legislation" that aimed "to create jobs by keeping industry within the State" unconstitutional. *Chemical Waste Mgmt., Inc. v. Hunt* 504 U.S. 334, 341 (1992) (cleaned up). Often, that discriminatory purpose is evident from the legislative history or the law's backers. *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 270–271 (1984) (the legislature's stated intent "was to aid Hawaiian industry"); *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 352 (1977) (a North Carolina law requiring uniform apple grading was pressed by in-state apple producers to eliminate Washington apples' competitive advantage). Here, every aspect of § 65(13)'s background makes clear its protectionist purpose.

From the beginning, sponsors have said that § 65(13) was enacted to protect New York customer-assistance workers and providers from out-of-state competition. Legislators proposed the 2008 bill and enacted the 2010 law to prevent the "disinvestment in … New York's economy" that they believed moving call-center jobs

out of state represented. 2008 Bill Jacket at 12; 2010 Bill Jacket at 6. The recent amendments are more of the same. As one senator acknowledged: "You know, at the end of the day it's about jobs." Dkt. 1-3, Legislative History p. 5441. The Governor agreed, signing the 2024 amendments to "ensure that good-paying . . . jobs stay right here in New York." 2024 Bill Jacket at 8.

Section 65(13)'s supporters sang from the same hymnal. They pressed for § 65(13) because it would compel utilities to keep jobs in New York. In 2008: "This legislation is an essential step towards protecting and retaining jobs in New York State." 2008 Bill Jacket at 21, 64, 73. And in 2010: "Simply stated—call center jobs for New Yorkers will help our economy." 2010 Bill Jacket at 31. The governor's focus on keeping "jobs" "in New York" in 2024 similarly makes clear the law's backers. 2024 Bill Jacket at 8. Like the North Carolina apple producers in *Hunt*, the § 65(13)'s backers pushed for the law to fend off out-of-state competition. 432 U.S. at 352.

The legislature's other claimed reason for enacting § 65(13)—ensuring quality of customer-assistance services—is pretext, as the Commission itself explained in both 2008 and 2010. Mandating in-state customer assistance "would diminish the efficient operation of utility service (and place upward pressure on rates) without any clear improvement in customer service." 2008 Bill Jacket at 18. It "provides no additional tangible benefits for customers." 2010 Bill Jacket at 14. That is why Defendants could offer no evidence "that a need exists for a customer-assistance representative to be physically present in New York State." PI Opinion 23.

Stripped of claims about quality of customer service, § 65(13) is a naked attempt to create New York jobs by forbidding utilities to look anywhere else for employees. Valuable as local jobs are, the Constitution does not allow states to keep them by cutting off companies' access to the interstate market. *See Lewis*, 447 U.S. at 44 ("[T]he Commerce Clause prohibits a State from using its regulatory power to protect its own citizens from outside competition.").

**C. Section 65(13) discriminates against interstate commerce in its effects.**

Section 65(13) also has a discriminatory effect because it "confers a competitive advantage upon local business vis-à-vis out-of-state competitors." *Rest. L. Ctr.*, 90 F.4th at 120 (cleaned up). It does so in the most straightforward way possible: prohibiting interstate operations unless utilities get the Commission's permission. *See Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 95 (2d Cir. 2009).

In that way, § 65(13) is similar to the local ordinance that the Supreme Court held unconstitutional in *C&A Carbone*. There, Clarkstown had given a single local firm a monopoly on all waste disposal in the town. 511 U.S. at 387. Because that ordinance allowed "only the favored operator to process waste" from the town, it discriminated against interstate commerce in waste-disposal services. *Id.* at 390–91.

The advantage § 65(13) provides in-state commercial interests is equally clear—until the Commission says otherwise, local call-center employees and customer-service providers have a monopoly in the market for utility customer-assistance services. The Commerce Clause does not permit such "simple economic protectionism." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 372 (2023).

### D. Section 65(13) cannot survive the Commerce Clause's virtually per se rule of invalidity.

For each of those reasons—its facial discrimination, its discriminatory purpose, and its discriminatory effects—§ 65(13) is subject to the "strictest scrutiny." *Camps Newfound*, 520 U.S. at 581–82 (quoting *Hughes*, 441 U.S. at 337). It is "per se invalid unless the government has no other means to advance a legitimate local purpose." *Variscite*, 2025 WL 2313142, at *10 (quoting *Rest. L. Ctr.*, 90 F.4th at 118)).

As this Court held at the preliminary-injunction stage, Defendants cannot satisfy either prong of that test. They "offered no admissible record evidence (only argument) that the statute serves any valid state interest or local benefit (i.e., unrelated to economic protectionism)." PI Opinion 22. No evidence, either in this case or in the legislative history, shows any problems with out-of-state customer assistance. Instead, Defendants' counsel admitted that the Commissioners had not "had any problems ... with the out-of-state centers," calling Defendants' claimed interest in local expertise nothing but a "historic factor." PI Hearing Tr. 20:8–12, 23:3.

Section 65(13) thus "solves" a nonexistent problem. The Commission recognized as much in 2008 and 2010, explaining that mandating in-state call centers "diminish[es] the efficient operation of utility service (and place[s] upward pressure on rates) without any clear improvement in customer service," 2008 Bill Jacket at 18, and "fails to demonstrate additional concrete benefits for customers," 2010 Bill Jacket at 14. It still—after preliminary-injunction briefing and argument—has yet to explain its change of tune.

In addition, even if Defendants could prove that § 65(13) furthers a legitimate state interest, they have yet to show that the same interest "cannot be adequately served by reasonable nondiscriminatory alternatives." *Camps Newfound*, 520 U.S. at 581 (quotation omitted). Only a single Supreme Court case has ever found that a state made that showing. *Maine v. Taylor*, 477 U.S. 131, 151–52 (1986). In that case, Maine presented testimony from three "scientific experts" who testified that importing out-of-state baitfish threatened to wreak havoc on Maine's ecosystem, and inspecting out-of-state baitfish for parasites or non-native species was "a physical impossibility." *Id.* at 140–41. *That* is what it takes to survive the Commerce Clause's "virtually per se rule of invalidity." *Id.* at 148 (quotation omitted).

As this Court explained, New York did not even try obvious nondiscriminatory alternatives, like training out-of-state customer-assistance representatives about local conditions. PI Opinion 25. As for Defendants' late-breaking claim that § 65(13)'s prohibition on sending calls out of state is necessary for data collection, Dkt. 24-1 at 15, the Commission already receives plenty of data through the Customer Service Performance Indicators that it requires utilities to track. Barnes Decl. ¶¶ 4–7. Defendants don't identify any other information that they would need, and they offer no reason to think that § 65(13) is the only way to obtain that additional information.

If § 65(13) were truly motivated by something other than rank protectionism, New York had plenty of regulatory options available to address its unproven concerns. It is telling that it jumped straight to banning interstate commerce.

## II. The remaining permanent-injunction factors favor relief.

In *Variscite*—another Commerce Clause challenge to a New York law—the Second Circuit recently reaffirmed that in constitutional cases, the merits are "the dominant, if not the dispositive, factor" in awarding injunctive relief. *Variscite*, 2025 WL 2313142, at *7 (quoting *A.H. ex rel. Hester v. French*, 985 F.3d 165, 176 (2d Cir. 2021)). That is the case here. As this Court held at the preliminary-injunction stage, injunctive relief is warranted.

First, application of the amended § 65(13) would cause Plaintiffs irreparable harm that no remedy at law would adequately redress. Plaintiffs suffer irreparable harm in two ways, as this Court explained. First, the deprivation of their rights under the Commerce Clause is an irreparable injury. PI Opinion 26–27. Since the preliminary-injunction opinion, the Second Circuit has confirmed that the deprivation of a plaintiff's Commerce Clause rights "ordinarily warrants a finding of irreparable harm." *Variscite*, 2025 WL 2313142, at *7; *see also Variscite NY One, Inc. v. New York*, 640 F. Supp. 3d 232, 243 (N.D.N.Y. 2022) (a Commerce Clause violation "constitutes irreparable harm"). Second, having to "either pay Draconian penalties" or "disrupt their existing customer-assistance business practices" irreparably injures Plaintiffs. PI Opinion 27; *see also* SUMF ¶¶ 14, 26 (moving operations to New York would be very costly). And because New York's sovereign immunity bars any claim for damages, Plaintiffs have no adequate remedy at law. *See United States v. New York*, 708 F.2d 92, 93 (2d Cir. 1983) ("in deciding whether a federal plaintiff has an available remedy at law that would make injunctive relief unavailable, federal courts may consider only the available *federal* legal remedies").

Second, the balance of hardships and the public interest favor injunctive relief. Given the lack of any evidence that Defendants have a valid interest in § 65(13), the hardship it imposes on Plaintiffs "decidedly outweighs" any hardship Defendants might suffer. PI Opinion 27–28; *see also Robar v. Vill. of Potsdam Bd. of Trustees*, 490 F. Supp. 3d 546, 574 (N.D.N.Y. 2020) (the government has no "interest in the enforcement of an unconstitutional law" (quoting *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013))). And an injunction would serve the public interest because "the public has a clear and strong interest in *not* having their emergency calls to their gas and electric utility disrupted" and their utility prices rise "merely in order to ensure that the public's utility customer-service representatives are physically located somewhere inside New York State … when there is no proof of the need for that physical presence." PI Opinion 28; *see also Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 637 (2d Cir. 2020) ("No public interest is served by maintaining an unconstitutional policy when constitutional alternatives are available to achieve the same goal.").

## Conclusion

New York Public Service Law § 65(13)(b) brazenly violates the Commerce Clause's most basic prohibition: states may not engage in "simple economic protectionism." *Bacchus*, 468 U.S. at 270. It is unconstitutional. Plaintiffs respectfully ask this Court to enter a declaratory judgment to that effect and permanently enjoin § 65(13)'s enforcement against National Fuel Gas Distribution Corporation and the members of the Business Council of New York State, Inc.

Dated: September 30, 2025

JONES DAY

By: */s/ Anthony J. Dick*

Anthony J. Dick, Bar No. 5078662
Anthony J. Jeffries, *pro hac vice*
ajdick@jonesday.com
ajjeffries@jonesday.com
51 Louisiana Avenue, N.W.
Washington, DC 20001.2113
Telephone: +1.202.879.3939
Facsimile: +1.202.626.1700

Tracy V. Schaffer, Bar No. 3959970
Benjamin Chasan, Bar No. 5920962
tschaffer@jonesday.com
bchasan@jonesday.com
250 Vesey Street
New York, NY 10281.1047
Telephone: +1.212.326.3939
Facsimile: +1.212.755.7306

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2025, a copy of the foregoing was filed using the CM/ECF system, which will effectuate service on all counsel of record.

/s/ *Anthony J. Dick*

*Attorney for Plaintiffs*