/UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NAT'L FUEL GAS DISTRIB. CORP.; and THE BUS. COUNCIL OF N.Y. STATE, INC.;

Plaintiffs,

v.

1:25-CV-0525 (GTS/MJK)

RORY M. CHRISTIAN, in his official capacity as Comm'r and Chair of the N.Y. State Pub. Serv. Comm'n; JAMES S. ALESI, in his official capacity as Comm'r of the N.Y. State Pub. Serv. Comm'n; DAVID J. VALESKY, in his official capacity as Comm'r of the N.Y. State Pub. Serv. Comm'n; JOHN B. MAGGIORE, in his official capacity as Comm'r of the N.Y. State Pub. Serv. Comm'n; UCHENNA S. BRIGHT, in her official capacity as Comm'r of the N.Y. State Pub. Serv. Comm'n; DENISE M. SHEEHAN, in her official capacity as Comm'r of the N.Y. State Pub. Serv. Comm'n; and RADINA M. VALOVA, in her official capacity as Comm'r of the N.Y. State Pub. Serv. Comm'n,

Defendants.

---

| APPEARANCES: | OF COUNSEL: |
| --- | --- |
| JONES DAY<br>Counsel for Plaintiffs<br>51 Louisiana Avenue, NW<br>Washington, DC 20001 | ANTHONY J. DICK, ESQ.<br>ANTHONY JACOB JEFFRIES, ESQ. |
| 250 Vesey Street<br>New York, NY 10281-1047 | BENJAMIN CHASAN, ESQ.<br>TRACY SCHAFFER, ESQ. |
| HON. LETITIA A. JAMES<br>Attorney General for the State of New York<br>Counsel for Defendants<br>300 South State Street, Suite 300<br>Syracuse, NY 13202 | TIMOTHY P. MULVEY, ESQ.<br>Assistant Attorney General |
| Dulles State Office Building<br>317 Washington Street, Suite Tenth Floor<br>Watertown, NY 13601 | JULIA K. TOCE, ESQ.<br>Assistant Attorney General |

GLENN T. SUDDABY, United States District Judge

**DECISION and ORDER**

Currently before the Court, in this civil action filed by the above-captioned gas corporation and business-advocacy organization ("Plaintiffs") against the above-captioned chair and six commissioners of the New York State Public Service Commission ("Defendants" or "the Commission"), is Plaintiffs' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 42.) For the reasons set forth below, Plaintiffs' motion is granted and Defendants are permanently enjoined from enforcing the relevant portions of N.Y. Pub. Serv. L. § 65(13) against Plaintiffs.

## I. RELEVANT BACKGROUND

### A. Summary of Plaintiffs' Complaint

Generally, liberally construed, Plaintiffs' Complaint alleges that New York State's enactment of certain amendments to N.Y. Pub. Serv. L. § 65(13) violates Article I, Section 8, Clause 3 (i.e., the Commerce Clause) of the U.S. Constitution, by using New York State's regulatory power to protect its own citizens from outside competition without a legitimate local purpose which cannot be adequately served by reasonable nondiscriminatory alternatives. (*See generally* Dkt. No. 1.) Specifically, Plaintiffs assert that the relevant amendments are facially discriminatory against out-of-state conduct. (*Id.*) Familiarity with this claim, and the factual allegations supporting it, is assumed in this Decision and Order, which is intended primarily for review by the parties. (*Id.*)

### B. Undisputed Material Facts on Plaintiffs' Motion for Summary Judgment[1]

[1] The Court has also considered Defendants' Statement of Additional Material Facts in

<u>Plaintiff National Fuel</u>

1. Plaintiff National Fuel is a New York entity organized as a gas corporation under New York Transportation Law § 10.

2. National Fuel provides natural gas utility service to more than 540,000 customers in New York state.

3. As part of its supervision of gas corporations, the New York Public Service Commission requires gas utilities like National Fuel to meet customer service quality standards.

4. National Fuel must track and report data on consumers abandoning calls, the speed with which calls are answered, and the length of hold times.

5. To provide customer assistance, National Fuel operates two call centers, one in Pennsylvania and the other in New York.[2]

6. National Fuel must track and report the same data for calls from New York customers whether they are answered in Pennsylvania or New York.

7. Employees in National Fuel's Pennsylvania call center are trained and able to help New York customers.

---

Dispute that was submitted with their opposition to Plaintiffs' motion, but finds that any dispute of fact raised therein is not material to the resolution of the relevant issues on Plaintiffs' motion.

[2] Although Defendants admit this asserted fact, they also attempt to add additional facts related to the fact that National Fuel also has in-person customer service locations. (Dkt. No. 43, Attach. 1, at ¶ 5.) However, these additional facts have no bearing on whether the asserted fact is disputed or not. *See Maioriello v. New York State Office for People With Developmental Disabilities*, 272 F. Supp. 3d 307, 311 (N.D.N.Y. 2017) ("[T]hroughout Plaintiff's Rule 7.1 Response, she 'admits' many of the facts asserted by Defendants in their Rule 7.1 Statement but then includes additional facts and/or legal argument in those responses. . . . Where this occurs, the Court will deem those facts admitted and disregard the additional factual assertions and/or argument that Plaintiff provides in her responses.").

8. Calls to National Fuel's emergency line are routed to the first available representative, whether that representative is in Pennsylvania or New York.

9. The representative advises the customer on the immediate next steps to ensure his or her safety and (if necessary) coordinates the response teams to help.

10. Limiting emergency calls to New York representatives could cause longer wait times, which could be dangerous for customers who need immediate aid.[3]

11. Pennsylvania representatives make up approximately 15% of the representatives who answer non-emergency calls from New York customers.

12. National Fuel does not differentiate between New York and Pennsylvania representatives when allocating calls from the New York queue.

13. If National Fuel had to answer all calls in New York, it could delay responses to both emergency calls and non-emergency calls.[4]

---

[3] Defendants deny this asserted fact, arguing that it is a hypothetical and unproveable statement that is unsupported by substantial evidence. (Dkt. No. 43, Attach. 1, at ¶ 10.) Plaintiffs support this asserted fact with a citation to the declaration of Nathan Barnes that was submitted with their motion for preliminary injunction, in which Mr. Barnes states that (a) National Fuel currently routes emergency calls to the first available customer service representative in either Pennsylvania or New York to minimize the average time it takes to answer such calls, as well as that (b) "limiting representatives to New York could reduce the number of employees available to assist customers experiencing an emergency by more than 40%." (Dkt. No. 7, Attach. 3, at ¶¶ 13, 19.) Contrary to Defendants' argument, the cited evidence shows that the possibility of longer wait times is not merely hypothetical or unprovable, and Defendants themselves cite no evidence to counter Mr. Barnes' estimate of the extent to which the available representatives would decrease if such calls could be answered only by New York representatives. For the above reasons, the Court finds the asserted fact to be deemed admitted, with the limited exception that it has changed the use of "would" to "could" to more accurately reflect Mr. Barnes' statements.

[4] This asserted fact (which has been denied by Defendants) is deemed to be admitted for all the reasons stated in Note 3 of this Decision and Order.

14. Moving its operations to New York would be costly because it would require National Fuel to change its operations, hire additional employees, and reprogram its phone systems.[5]

15. National Fuel is not aware of any customer complaints that are based on the location of the representative who provided customer service.

16. The Commissioners are not aware of any customer complaints that are based on the location of the representative who provided customer service.

Plaintiff Business Council and Its Members

17. Plaintiff Business Council is the leading business organization in New York State, representing the interests of more than 3,000 large and small firms throughout the state, including gas and electric corporations.

18. Corning Natural Gas Corporation ("Corning") is a member of the Business Council.

19. Corning is a gas corporation that provides natural gas utility services to customers in New York State.

[5] Defendants deny this asserted fact, arguing that, pursuant to New York law, the Public Service Commission can provide a rate order that will permit National Fuel to pass the costs of operating the relevant call center and other customer service activities to customers. (Dkt. No. 43, Attach. 1, at ¶ 14.) However, the fact that National Fuel might be permitted to eventually recoup costs through rate changes does not change the fact that, as Plaintiffs assert, the changes would inherently be "costly," especially given that there is no evidence presented to show that National Grid would immediately recoup the costs of moving all of its customer service activities to New York or how long full recoupment would take. The likelihood that it could take weeks, months, or even possibly years before they recover the costs required to make the relevant changes is sufficient to indicate those changes would be "costly," and Defendants do not dispute that compliance would require some initial expenditure of money by Plaintiffs. As a result, Defendants' evidence does not actually contradict the asserted fact.

20. Corning is subject to the Commission's customer service standards.

21. To provide customer service, Corning relies on both an in-state Contact Center staffed by Corning employees and a third-party vendor, Cooperative Response Center ("CRC").

22. CRC has call centers in states across the country, but not in New York.

23. Staff members in Corning's Contact Center handle customer contact during normal business hours: Monday through Friday from 8:00 a.m. to 4:30 p.m.

24. CRC handles emergency calls during non-business hours and when a call received during business hours is not answered after the fourth ring.

25. Corning has not received any customer complaints about the after-hours call center and continues to have high rates of customer satisfaction.

26. Overhauling its operations to move all provision of customer assistance to New York would be "prohibitively expensive" and would require Corning to break its contract with CRC.[6]

The Legislation

27. The Defendant Commissioners are sued in their official capacity.

28. In 2008, the New York Legislature passed a bill stating that "[e]very gas corporation, electric corporation or municipality furnishing utility service shall, using services

[6] Defendants deny the asserted fact, relying on the same New York law permitting the passing on of operations costs to customers discussed in Note 5 of this Decision and Order. Because, again, Defendants do not provide any evidence to show that the incurred expenses would be immediately reimbursed so as to not result in any significant expenditure by Corning, Defendants evidence that such costs can *eventually* be recouped through rate increases on customers is insufficient to create a genuine dispute regarding whether the upfront cost of moving customer service to New York would be "prohibitively expensive."

located within this state and within their service area, provide call center service assistance for" various enumerated services, including requests for emergency service.[7]

29. At least one legislator who voted in support of the 2008 bill considered utilities moving customer service assistance operations out-of-state to be "a disinvestment in both New York's economy and overall safety."[8]

30. Some unions supported the 2008 bill because they considered it "an essential step towards protecting and retaining jobs in New York State."[9]

31. The Commission opposed the 2008 bill.

32. The Governor vetoed the 2008 bill.

33. In 2010, the Legislature passed and the Governor signed N.Y. Pub. Serv. L. § 65(13).

34. As originally enacted, the law requires utilities to provide "call center customer assistance receiving inquires on" various topics, and also provides that "[n]o gas or electric corporation shall close a call center or other facility providing customer assistance set forth in paragraph (a) of this subdivision or relocate such customer assistance to another area of New York or outside of New York state without notice and hearing before the commission."

---

[7] The Court agrees that text of the bill speaks for itself and therefore has substituted it here in place of Plaintiffs' characterization of that text.

[8] The Court agrees with Defendants that the asserted fact as stated is not wholly supported by the cited evidence, and therefore has altered the asserted fact to more accurately reflect the cited evidence.

[9] This asserted fact has been altered for the same reasons discussed in Note 8 of this Decision and Order.

35. The Legislature's memorandum in support of the 2010 bill stated that utilities' reliance on out-of-state call centers was "a disinvestment in both New York's economy and overall safety."

36. Some unions supported the 2010 bill, arguing that it would help keep call-center jobs in New York.[10]

37. The Commission neither supported nor objected to the 2010 bill.

38. In 2024, the Legislature enacted amendments to Public Service Law § 65(13).

39. The amendments provided that "[f]or purposes of this section, each individual phone call, writing, email, text, chat, or any other communication shall count as an independent instance of customer assistance, and therefore each shall trigger a gas or electric corporation's duties under paragraph (b) of this subdivision," and the verbiage of paragraph (b) was also amended to match that expanded scope.

40. The Governor's approval memorandum explained the amendment's purpose, saying, "[t]he money paid by New York's utility ratepayers should continue to support good-paying jobs here in New York State."

41. The Governor's approval memorandum further stated that "this bill required amendments to ensure consistency with existing laws, to define acceptable exemptions, to align penalties with existing law, and to ensure that call center jobs already in the State are protected, "ensuring that good-paying union jobs stay right here in New York."

42. In 2025, the Legislature enacted the amendments that the Governor's approval memorandum had anticipated.

---

[10] This asserted fact has been altered for the same reasons discussed in Note 8 of this Decision and Order.

### C. Summary of Parties' Arguments on Plaintiffs' Motion

#### 1. Plaintiffs' Memorandum of Law

Generally, in their motion for summary judgment, Plaintiffs make five arguments. (Dkt. No. 42, Attach. 1.) First, Plaintiffs argue that Section 65(13) violates the Commerce Clause in that it facially discriminates against interstate commerce because it (a) expressly burdens out-of-state commerce (i.e., prohibiting the use of out-of-state customer service resources) in order to benefit in-state commerce (i.e., requiring Plaintiffs to hire New York customer service representatives), and (b) strict scrutiny therefore applies as this Court previously held related to the preliminary injunction motion. (*Id.* at 18-24.)

Second, Plaintiffs argue that Section 65(13) violates the Commerce Clause also because it was enacted for a discriminatory purpose, namely to keep customer service jobs in New York as documented by various statements made related to the law by lawmakers during its consideration and passage, and any assertion that the true purpose of the law was to ensure the quality of customer service is mere pretext. (*Id.* at 24-26.)

Third, Plaintiffs argue that Section 65(13) violates the Commerce Clause also because it has a discriminatory effect on interstate commerce in that it confers a competitive advantage on in-state business over out-of-state business. (*Id.* at 26.)

Fourth, Plaintiffs argue that, because Section 65(13) is subject to strict scrutiny and thus is *per se* invalid unless Defendants can show that they had no other means to advance a legitimate local purpose, which they cannot do. (*Id.* at 27-28.)

Fifth, Plaintiffs argue that the requirements for a permanent injunction have been met because (a) they have shown irreparable harm through the violation of their constitutional rights and through the threat of payment of large fines or disruption of their existing customer service

business practices if the law is permitted to be enforced, and they have no other means to receive a remedy under the law, and (b) the balance of hardships and the public interest favor an injunction in that Defendants have no valid interest that outweighs the harm to Plaintiffs and the public is served by having the most efficient, undisrupted customer service related to its utilities without increases to the rates of those utilities that would result from the need to hire in-state service representatives. (*Id.* at 29-30.)

**2. Defendants' Opposition Memorandum of Law**

Generally, in their opposition to Plaintiffs' motion, Defendants make four arguments. (Dkt. No. 43, Attach. 2.) First, Defendants argue that Section 65(13) does not violate the Commerce Clause because (a) it does not discriminate on its face between in-state and out-of-state businesses in that it equally regulates customer service conduct that is outside of the corporation's New York state service territory as well as that which is outside of New York state and thus burdens some in-state conduct just as much as it burdens out-of-state conduct, (b) it does not prohibit commerce, but instead establishes a regulatory process of notice and hearing through which the Commission will have broad discretion to permit blanket or generic approvals of requests and to consider a utility company's past practice of using out-of-state customer service resources as a basis for granting approval, and (c) it addresses reasonable state interests of ensuring safe, adequate, affordable, and reliable utility services and imposes only the minimal burden of a notice-and-approval process to ensure proper oversight, especially given that the current version of the statute does not require, as Plaintiffs assume, separate notice and approval for each individual call or communication. (*Id.* at 11-21.)

Second, Defendants argue that, as to the request for a permanent injunction, Plaintiffs have failed to show that monetary damages would be insufficient to redress any alleged harm,

especially given that Plaintiffs would be able to recoup any additional costs required to comply with the statute through its ratemaking process. (*Id.* at 21-22.)

Third, Defendants argue that, as to the request for a permanent injunction, the balance of the equities tips in their favor based on public interest in the conservation of public resources, the efficient administration of government programs and confidence in those programs, and the avoidance of waste or fraud in government. (*Id.* at 22-23.)

Fourth, Defendants argue that questions of material fact regarding the details of how the notice-and-hearing process will be implemented and carried out – none of which have been decided by the Commission yet because of the preliminary injunction – preclude summary judgment at this time. (*Id.* at 23-24.)

**3. Plaintiffs' Reply Memorandum of Law**

Generally, in their reply, Plaintiffs make six arguments. (Dkt. No. 44.) First, Plaintiffs argue that Defendants failed to respond to their argument that Section 65(13) was enacted with discriminatory intent such that Plaintiffs need only show that their argument possesses facial merit. (*Id.* at 5.)

Second, Plaintiffs argue that Defendants have not persuasively countered their arguments regarding Section 65(13) being facially discriminatory because not only do they concede that the statute prioritizes local service, but also their argument that the statute does not discriminate (in that it differentiates between types of service based on a "service territory" rather than state lines) is contrary to applicable Supreme Court precedent; and the statute also exempts call centers that existed within New York state before the relevant amendments were enacted with no corresponding exemption for pre-existing call centers outside of New York. (*Id.* at 6-7.)

Third, Plaintiffs argue that Defendants' assertion that Section 65(13) merely institutes a

process rather than a prohibition has already been rejected by this Court and is otherwise unpersuasive because (a) any discriminatory burden on interstate commerce violates the Commerce Clause regardless of whether the burden imposed (which here is being required to provide a notice and wait for a hearing) is minimal, (b) the exercise of a constitutional right cannot be left up to a government's discretionary decision and so even the possibility that the Commission might reject their request to use out-of-state call centers renders the statute impermissible, (c) Defendants' statements about how the Commission might exercise its discretion is insufficient to show that there is no danger that requests to use out-of-state call centers might be denied, and nevertheless how the statute might be applied to any given individual does nothing to overcome a facial challenge to the statute, and (d) the fact that a previous version of Section 65(13) requiring utilities to seek permission before relocating call centers out of New York has not been challenged is irrelevant to the claims here. (*Id.* at 7-9.)

Fourth, Plaintiffs argue that strict scrutiny applies here, and so Defendants' arguments about the application of other standards are irrelevant, in addition to arguing that Defendants have not provided any evidence to show that there is a sufficient government rationale that would meet the requirements of strict scrutiny. (*Id.* at 9-11.)

Fifth, Plaintiffs argue that permanent injunctive relief is warranted in that Defendants' arguments regarding irreparable injury are contrary to the Court's previous findings and their arguments regarding the balance of the equities and public interest are both not persuasively relevant to the circumstances here and insufficient to outweigh the harms Plaintiffs will suffer. (*Id.* at 11-12.)

Sixth, Plaintiffs argue that there are no material facts in dispute to preclude summary judgment because how the Commission may or may not implement the notice-and-hearing

process in the future is immaterial based on the fact that Section 65(13) is facially discriminatory. (*Id.* at 12-14.)

## II. GOVERNING LEGAL STANDARD

### A. Legal Standard Governing a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[11] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ.

---

11 As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

P. 56(a), (c), (e).[12]

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.).. What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1 by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local

---

[12] Among other things, N.D.N.Y. Local Rule 56.1(b) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 56.1(b).

Rule 7.1(a)(3).[13] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

**B. Legal Standard Governing a Claim Under the Dormant Commerce Clause**

The Commerce Clause of the U.S. Constitution vests Congress with the authority "[t]o regulate Commerce ... among the several States." U.S. Const. art. I, § 8, cl. 3. Within that clause, the Supreme Court has interpreted the existence of a negative implication known as the "dormant" Commerce Clause, which is intended to prevent "economic protectionism – that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273 (1988).

In the Second Circuit, "[a]nalysis of state and local laws under the dormant Commerce Clause treads a well-worn path." *N.Y. Pet Welfare Ass'n, Inc. v. City of New York*, 850 F.3d 79,

[13] *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

89 (2d Cir. 2017). "[T]he 'threshold' question we consider is whether a state or local government is 'regulating.'" *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200, 208 (2d Cir. 2003) (internal quotation marks omitted). "If a statute 'regulates,' then the second question we examine is whether the statute, in 'regulating,' affects interstate commerce." *Brown & Williamson Tobacco Corp.*, 320 F.3d at 208 (internal quotation marks omitted). "Finally, if a state regulation 'affects' interstate commerce, we must determine whether the regulation discriminates against interstate commerce or regulates evenhandedly with incidental effects on interstate commerce." *Id* (internal quotation marks omitted); *see also Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 47 (2d Cir. 2007) ("[W]e first determine whether it clearly discriminates against interstate commerce in favor of intrastate commerce, or whether it regulates evenhandedly with only incidental effects on interstate commerce.").

In this context, discrimination means "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Ore. Waste Sys., Inc. v. Dep't of Env't Quality of Or.*, 511 U.S. 93, 99 (1994); *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273 (1988). "A clearly discriminatory law may operate in three ways: (1) by discriminating against interstate commerce on its face . . . ; (2) by harboring a discriminatory purpose . . . ; or (3) by discriminating in its effect . . . ." *Town of Southold*, 477 F.3d at 47.

"We then apply the appropriate level of scrutiny." *Id*. "A law that clearly discriminates against interstate commerce in favor of intrastate commerce is virtually invalid per se and will survive only if it is 'demonstrably justified by a valid factor unrelated to economic protectionism.'" *Id*. (citing *Wyoming v. Oklahoma*, 502 U.S. 437 [1992]). "A law that only incidentally burdens interstate commerce is subject to the more permissive balancing test under *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 . . . (1970), and will be struck down if the burden

imposed on interstate commerce clearly exceeds the putative local gains." *Town of Southold*, 477 F.3d at 47. "The party challenging a law as either clearly discriminatory or violative of *Pike* bears the threshold burden of demonstrating that it has a disparate impact on interstate commerce—the fact that it may otherwise affect commerce is not sufficient." *Id*. (internal quotation marks omitted).

"When discrimination against commerce . . . is demonstrated, the burden falls on the State to justify it both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake." *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 353 (1977); *see also Maine v. Taylor*, 477 U.S. 131, 138 (1986) ("[O]nce a state law is shown to discriminate against interstate commerce either on its face or in practical effect, the burden falls on the State to demonstrate both that the statute serves a legitimate local purpose, and that this purpose could not be served as well by available nondiscriminatory means.") (internal quotation marks omitted); *Town of Southold*, 477 F.3d at 47 ("If discrimination is established, the burden shifts to the government to show that the [legitimate] local benefits of the law outweigh its discriminatory effects and that the government lacked a nondiscriminatory alternative by which it could protect the local interests.").

When discrimination against commerce is *not* demonstrated, however, then (again, as set forth in *Pike*), the challenging party must demonstrate that the statute places a burden on interstate commerce that is "clearly excessive in relation to the putative local benefits." *Town of Southold*, 477 F.3d at 47 (internal quotation marks omitted).

## III. ANALYSIS

**A. Whether N.Y. Pub. Serv. L. § 65(13) Violates the Commerce Clause**

After carefully considering the matter, the Court answers the above-stated question in the affirmative for the reasons stated in Plaintiffs' memoranda of law. *See, supra,* Parts I.B.1 and I.B.3. of this Decision and Order. To those reasons, the Court adds the following analysis (which is intended to supplement, and not supplant, Plaintiffs' reasons).

The current version of Section 65(13) requires gas and electrical corporations that furnish utility services to provide certain call center customer assistance, which include "receiving inquiries by phone or in writing" on a number of topics, including requests for emergency services. N.Y. Pub. Serv. L. § 65(13)(a). The statute further provides, as is relevant to this action that

> No gas or electric corporation shall close a call center or other facility providing the customer assistance set forth in paragraph (a) of this subdivision or send such customer assistance outside such gas or electric corporation's New York state service territory or outside of New York state without notice, a hearing and approval before the commission. Upon receipt of the notice required pursuant to this paragraph, the commission shall provide notice of the proceeding to interested parties and the public; and shall promptly fix a date for the commencement of a public hearing thereon not less than sixty days after such receipt. . . . Such hearing shall be commenced upon proper notice to the parties of the proceeding and the public at least thirty days prior to the scheduled date.

N.Y. Pub. Serv. § 65(13)(b).

There are some limited exceptions to this notice-and-hearing requirement to send customer assistance requests outside of the corporation's New York state service territory or outside of New York, including (a) when a call center is unable to adequately respond to customer assistance requests due to enumerated temporary situations that impact the ability of the call center to manage the requests, (b) for the purpose of workforce training, and (c) pursuant to workplace flexibility policies that allow employees to work from approved alternative

worksites other than the call center location. *Id.* The first of these exceptions "shall be temporary and only for the duration of the emergency situation" and the corporation "must notify the commission of any transfers within ten business days following" the transfer of any calls pursuant to that exception. *Id.* The statute also exempts from the notice-and-hearing requirement "[t]he relocation of customer assistance calls to any of the corporation's call centers within New York state in existence prior to the effective date of the laws of two thousand twenty-five that amended this paragraph, regardless of the specific service territory." *Id.*

Here, Defendants do not seem to dispute that Section 65(13) has some sort of effect on interstate commerce so as to fall under the purview of the Commerce Clause. Rather, they argue that, despite that effect, the statute does not violate the Commerce Clause because it does not facially discriminate against out-of-state economic interests and instead imposes only a minimal burden on those interests based on a reasonable state interest.[14] As discussed above and as Plaintiffs make clear in their briefing, they have here asserted a facial challenge to the constitutionality of the amendments enacted to Section 65(13).

Section 65(13) facially treats customer service calls routed to an out-of-state call center differently (and less favorably) than those sent to an in-state call center. The most glaring example of this is the fact that while the new notice-and-hearing requirement explicitly does not apply to customer assistance calls sent to a call center located in state but outside of a corporation's state service territory where the practice of routing customer service calls to that out-of-territory call center existed prior to the relevant amendments, there is no corresponding

---

[14] Despite arguing as such, Defendants appear to admit that the relevant amendments "prioritize locally provided customer service." (Dkt. No. 43, Attach. 2, at 10.) As will be discussed, the Court is not convinced that providing "priority" to local service is different from discriminating against interstate commerce.

exception that exempts pre-existing out-of-state call centers. Thus, under the plain language of the statute, a continuation of preexisting in-state conduct is not considered a violation of the statute (even when it occurs outside of the corporation's in-state service territory), but continuing to send customer assistance calls to a preexisting out-of-state call center without complying with the notice-and-hearing process would be a violation. The same conduct being treated differently based on whether it occurs in-state or out-of-state is a clear violation of the Commerce Clause, and it is clear from the plain text of the statute that in-state conduct is here treated more favorably than out-of-state conduct. Thus, this portion of Section 65(13) is *per se* invalid.

As to the other challenged portion of Section 65(13), the fact that the text of the statute permits a corporation to send customer assistance calls to call centers within their state service territory without restriction while requiring it to comply with the notice-and-hearing process before sending the same customer assistance calls to call centers outside of New York state is also facially discriminatory. Specifically, contrary to Defendants' arguments, the fact that the notice-and-comment requirement also applies to some in-state conduct (i.e., where a corporation wishes to send customer assistance calls to a call center outside of its in-state service territory) does not change that assessment.

In *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383 (1994), the Supreme Court found that a law that required all solid waste located within the relevant area be sent to a specific local plant for processing violated the Commerce Clause on its face because "it allows only the favored operator to process waste that is within the limits of the town," and further found that "[t]he ordinance was not less discriminatory because in-state or in-town processors are also covered by the prohibition." *C & A Carbone, Inc*., 511 U.S. at 391. Perhaps even more illustrative is *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Natural Resources*,

504 U.S. 353 (1992), in which the Supreme Court, when assessing an argument that a Michigan statute that prohibited an individual from accepting for disposal any solid waste that did not originate in the county unless explicitly authorized by the county's planning committee did not discriminate against interstate commerce on its face or in effect "because they treat waste from other Michigan counties no differently than waste from other states," found that the statute was nevertheless discriminatory because "out prior cases teach that a State (or one of its political subdivisions) may not avoid the strictures of the Commerce Clause by curtailing the movement of articles of commerce through subdivisions of the State, rather than through the State itself." *Fort Gratiot Sanitary Landfill, Inc.*, 504 U.S. at 361. Just as the fact that the relevant county in *Fort Gratiot Sanitary Landfill, Inc.* prohibited waste from other counties in Michigan as well as other states did not prevent a finding that the statute facially discriminated against interstate commerce, neither does the fact that Defendants apply the notice-and-hearing requirement to in-state call centers outside of the Plaintiffs' stated service territories prevent that statute from being found to facially discriminate against interstate commerce here.[15]

Defendants' argument that Section 65(13)(b) does not impose a prohibition on the use of

---

[15] Defendants' reliance on an out-of-context quote from Justice O'Connor's concurrence in *C & A Carbone, Inc*. does not support their argument. Specifically, Justice O'Connor's ultimate conclusion in disagreeing with the majority that the relevant law did not discriminate in interstate commerce was premised on the fact that "in-town competitors of the transfer facility are equally burdened" when compared with out-of-town and out-of-state competitors. *C & A Carbone, Inc*., 511 U.S. at 404-05 (O'Connor, J., concurring). Here, the plain text of Section 65(13) imposes no burden at all on customer service calls routed to a call center located in the relevant in-state service area. Thus, even if the Court were to consider this concurrence as a persuasive statement of the law, it does not help Defendants.

Further to the extent Defendants rely upon *Nichols Media Grp., LLC v. Town of Babylon*, 365 F. Supp. 2d 295 (E.D.N.Y. 2005), the Court respectfully declines to follow that case's lead, noting that it does not appear to have acknowledged cases like *C & A Carbone, Inc*. and *Fort Gratiot Sanitary Landfill, Inc.*, or assessed what impact those cases have on the relevant analysis.

out-of-state call centers, but rather a process that must be complied with before engaging in that conduct, is no more persuasive now than it was when they raised it in opposition to Plaintiffs' motion for a preliminary injunction. (Dkt. No. 31, at 20-21.) Whether or not a corporation might be permitted to send customer service calls to an out-of-state call center after complying with the notice-and-hearing process is immaterial because the harm is that they are required to go through that process at all to engage in a practice that would be permitted without any such process if conducted through an in-state, in-service-territory call center. In other words, there is an extra burden being applied to out-of-state conduct that is not being applied to in-state conduct, whether or not a corporation might be permitted to engage in the out-of-state conduct after complying with the notice-and-hearing process.[16] Again, this is exactly the sort of

---

16 As Plaintiffs correctly note, it does not matter whether the burden imposed is substantial or minimal; *any* burden not also imposed on relevant in-state conduct is a violation of the Commerce Clause when considering a facially discriminatory statute. *See Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 581 (1997) (noting that, in the context of a facially discriminatory statute, "there is no '*de minimis*' defense to a claim of discrimination under the Commerce Clause); *Associated Indus. Of Missouri v. Lohman*, 511 U.S. 641, 649-50 (1994) (noting that "[a]s a general matter we have rejected reliance on any calculus that requires a quantification of discrimination as a preliminary step to determining whether discrimination is valid," and "unless one of several narrow bases of justification is shown, … actual discrimination, wherever it is found, is impermissible, and the magnitude and scope of the discrimination have no bearing on the determinative question whether discrimination has occurred"). (*See also* Dkt. No. 31, at 21 nn.10 and 11 [collecting cases].)

Moreover, even if the degree of the burden was relevant, the Court is not convinced by Defendants' attempts to make the burden seem minimal. Notably, they now argue, citing a declaration submitted with their opposition memorandum of law, that the Commission will likely be permitted to consider a corporation's past practice when deciding whether to approve a request to send customer assistance out-of-state as well as that a corporation will likely be permitted to seek a general or blanket approval rather than approval for each individual call transfer, but none of this changes the fact that (a) Plaintiffs are still required to go through the notice-and-hearing process, regardless of whether they are likely to get their request approved, and (b) the plain language of the statute suggests that process is not likely to be a quick one: specifically, it states that the Commission, upon receiving notice and after providing notice of the proceedings to interested parties and the public, shall set a date for the public hearing "not less than sixty days after" receiving the corporation's notice, which means that it will take *at least*

differentiation of treatment the Commerce Clause is meant to prevent.

Because there is no genuine dispute of material fact here bearing upon the finding of whether Section 65(13) discriminates on its face, the Court finds, as it did in its Decision and Order on the preliminary injunction motion, that strict scrutiny applies here. "Discrimination against interstate commerce in favor of local business or investment is *per se* invalid, save in a narrow class of cases in which the municipality can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest." *C & A Carbone, Inc.*, 511 U.S. at 392 (citing *Maine v. Taylor*, 477 U.S. 131 [1986]).

Here, the only "local interests" that Defendants advance are related to the timeliness and quality of customer service assistance provided by utility corporations. However, even if the Court were to credit that those are legitimate local interests despite the fact that there still has been no evidence presented to establish that Plaintiffs' use of out-of-state call centers to handle

---

sixty days before a hearing occurs, and then they must attend a public hearing where submission of testimony will be allowed, and then wait an undefined amount of time for the Commission to render a decision. N.Y. Pub. Serv. L. § 65(13)(b). Even if the Court were to accept Defendants' evidence that appears to assert that a corporation would likely only need to go through this process once related to a specific call center (because it would be granted a general or blanket approval to send customer assistance calls to that out-of-state call center), complying with the outlined process is still not a minimal or negligible burden, especially if it would require the corporation to cease (for the pendency of the process, which, again, appears to take more than sixty days) sending customer assistance calls to an out-of-state call center it had already been using before the relevant amendments were enacted. While Defendants may be correct that the Commission will have significant discretion in some aspects related to the process, they cannot alter the timelines and requirements that are specifically enumerated in the statute itself. Lastly, even in Defendants' evidence, there is still no guarantee that a utility corporation will have its request to send customer assistance calls to an out-of-state call center approved, and that decision rests seemingly almost entirely within the discretion of the Commission so long as they could find a reasonable reason to deny it. As a result, the Court finds that there is no genuine dispute of material fact regarding whether the discrimination against interstate commerce is more than *de minimis*.

their New York customer assistance has resulted in any customer complaints or decrease in quality of assistance provided, Defendants have not met their burden to show that the process outlined in Section 65(13) was the only means to advance those interests. They do not even address Plaintiffs' arguments that the relevant non-protectionist interests of customer service assistance quality could be achieved by requiring out-of-state customer service representatives to be trained regarding the local conditions of the relevant service area or through the sort of data tracking that is already required through the Customer Service Performance Indicators.[17] (Dkt. No. 42, Attach. 1, at 28.) Simply put, Defendants' citation to some evidence that a legitimate local interest might exist is not enough; in order to meet the requirements of the applicable strict scrutiny, they must also show that the statute was the only means available to advance that interest, and they have failed to do so here.

For all of the above reasons, and because Defendants have raised no genuine dispute of material fact, the Court finds that the relevant amendments to N.Y. Pub. Serv. L. § 65(13) violate the Commerce Clause and grants summary judgment to Plaintiffs.

### B. Whether Plaintiffs Have Established the Requirements for Grant of a Permanent Injunction

After carefully considering the matter, the Court answers the above-stated question in the affirmative for the reasons stated in Plaintiffs' memoranda of law. *See, supra,* Parts I.B.1 and I.B.3. of this Decision and Order. To those reasons, the Court adds only the following analysis (which, again, is intended to supplement, and not supplant, Plaintiffs' reasons).

---

[17] It is notably undisputed that Plaintiffs are already required to track the same data related to customer service metrics regardless of whether that service is performed by representatives within the state of New York or out-of-state.

"According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief," by demonstrating "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Plaintiffs meet the first factor here because the finding that Section 65(13) violates the Commerce Clause of the United States Constitution is sufficient to establish an irreparable injury. *See Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 636 (2d Cir. 2020) (noting that "a 'presumption of irreparable injury … flows from a violation of constitutional rights'") (quoting *Jolly v. Coughlin*, 76 F.3d 468, 482 [2d Cir. 1996]); *Am. Booksellers Found. for Free Expression v. Dean*, 202 F. Supp. 300, 321 (D. Vt. 2002) (finding that "'[d]eprivation of the rights guaranteed under the Commerce Clause constitutes irreparable injury'") (quoting *Am. Libraries Ass'n v. Pataki*, 969 F. Supp. 160, 168 [S.D.N.Y. 1997]); *see also Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) ("Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that is a loss that one should not be expected to suffer.").

The remedies available at law would also be inadequate to compensate for this violation of Plaintiffs' constitutional rights. Specifically, Plaintiffs' being unable to send customer service calls to their existing out-of-state customer service centers will disrupt their customer service practices, most notably resulting in a reduction of representatives available to answer

customer calls, which conceivably would result in longer customer wait times to receive service, complaints about service, and unfavorable data related to Plaintiffs' provision of those services, such as related to the length of hold times. Defendants argue that the asserted disruption of Plaintiffs' customer service practices is not imminent (as supported by the declaration of Anna Senatore) and that Plaintiffs indeed have not availed themselves "of the process that would enable them to avoid either of these outcomes and be afforded the ability to proceed with their business under the amended law." (Dkt. No. 43, Attach. 2, at 21.) However, Defendants' solution that Plaintiffs can avoid the relevant harm by simply complying with the notice-and-hearing procedure ignores the fact that Plaintiffs have no obligation to comply with an unconstitutional statute even if doing so would prevent or mitigate the harm they allege. Moreover, Defendants' evidence asserting that the Commission is able to consider a utility corporation's past practice of using out-of-state customer service resources and that it will likely grant blanket or general approvals of requests to send customer service out of state does not show that disruption to Plaintiffs' current customer service practices would be minimal or non-existent in the absence of an injunction: as was discussed previously, the statute itself indicates that the relevant procedure requires a not-insignificant amount of time before any decision on a request can be rendered, during which time Plaintiffs would experience disruption of their customer service practices. Moreover, Defendants' own assertion that Plaintiffs can avoid any potential harm by simply complying with the procedure does not leave the Court with the impression that Defendants will be particularly fastidious about protecting Plaintiffs' constitutional rights such that a permanent injunction would be unnecessary.

As to Defendants' argument that the injury here can be compensated monetarily because New York law provides a mechanism by which utility corporations can recoup the cost of certain expenses through increasing customer rates, Plaintiffs are correct that such ability to recover those costs is irrelevant to the injunction analysis because "in deciding whether a federal plaintiff as an available remedy at law that would make injunctive relief unavailable, federal courts may consider only the available *federal* legal remedies." *United States v. State of New York*, 708 F.2d 92, 93 (2d Cir. 1983) (emphasis in original). Also as argued by Plaintiffs, "claims for money damages against state officials … sued in their official capacities, are also barred under the Eleventh Amendment." *Ennis v. New York Dep't. of Parole*, 18-CV-0501, 2018 WL 3869151, at *4 (N.D.N.Y. June 12, 2018) (Dancks, M.J.), report-recommendation adopted by 2018 WL 3862683 (N.D.N.Y. Aug. 14, 2018) (Suddaby, C.J.). Because all Defendants in this case are state officials sued in their official capacity, Plaintiffs do not have an available federal legal remedy related to any monetary damages they might incur as a result of failing to comply with the relevant amendments to Section 65(13). As a result, the Court finds that the remedies available at law are inadequate to compensate for compensable injuries caused by the relevant constitutional violation.

Lastly, the balance of the hardships and public interest both also weigh in favor of an injunction for essentially the same reasons discussed in the Decision and Order that granted the preliminary injunction. (Dkt. No. 31, at 27-28.) Specifically, as to the hardships factor, Defendants have proffered no evidence to establish or even create a genuine dispute of fact that the physical location of a customer service representative has an impact on the quality of service they provide. As Plaintiffs argue, those out-of-state representatives could be trained regarding

the local conditions and other local knowledge related to the relevant service territory. Notably, it is undisputed that there are no known instances of a customer complaining about the service provided by an out-of-state customer service representative related to that representative's location. As to the public interest factor, the public has an interest in both having access to uninterrupted, reliable customer service particularly in the case of a utility emergency and in not being made to pay more for utility services to recoup the costs Plaintiffs would incur in being made to comply with an unconstitutional statute.

For all of the above reasons, the Court finds that a permanent injunction in warranted.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiffs' motion for summary judgment (Dkt. No. 42) is **GRANTED**; and it is further

**ORDERED** that the Clerk of Court enter judgment in favor of Plaintiffs; and it is further

**DECLARED** that the relevant amendments to N.Y. Pub. Serv. L. § 65(13) that are the subject of this action violate the Commerce Clause of the United States Constitution; and it is further

**ORDERED** that Defendants are **PERMANENTLY ENJOINED** from enforcing those amendments to N.Y. Pub. Serv. Law § 65(13) against Plaintiffs or the members of The Business Council of New York State, Inc.

Dated: September 10, 2026
Syracuse, New York

Glenn T. Suddaby
U.S. District Judge